IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LARRY B. FLEMING and ) | | |
| MARK W. HARRIS ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | 1:17CV418 | |
| ) | | |
| NORFOLK SOUTHERN CORPORATION ) | | |
| and NORFOLK SOUTHERN RAILWAY, ) | | |
| COMPANY, ) | | |
| ) | | |
| Defendants. ) | | |

**ORDER**

Plaintiffs, Larry M. Fleming ("Mr. Fleming") and Mark W. Harris ("Mr. Harris"), initiated this action against Defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company, alleging retaliation in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"). Before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).[1] For the reasons set forth below, the Court will grant Defendants' motion.

**I.    BACKGROUND**

According to the Complaint, Mr. Harris, who is Caucasian, was employed by Defendants as a conductor from May 2011 until his termination on July 7, 2016. (ECF No. ¶ 4.) Mr. Fleming, who is also Caucasian, was employed by Defendants as a brakeman from

---

[1] Though Defendants, in their Motion to Dismiss, state that they "move[ ] to dismiss the Complaint," (ECF No. 7 at 1), Defendants' arguments for dismissal are exclusively focused on the claims alleged by Mr. Harris. (*See generally* ECF Nos. 7, 8.) Nowhere in Defendants' motion, supporting memorandum of law, or reply brief, (ECF Nos. 7, 8, 12), do they proffer arguments for dismissal of claims alleged by Mr. Fleming. Accordingly, this Court will only consider the motion for dismissal of claims alleged by Mr. Harris.

October 2006 until he was terminated on July 7, 2016. (*Id.* ¶ 3.) During his employment, Mr. Fleming filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge") for race discrimination which included claims against Ben Fennell, an African-American Division Superintendent employed by Defendants.[2] (*Id.* at 1; *id.* ¶ 17.)

On June 14, 2016, Plaintiffs, along with RJ Johnson ("Mr. Johnson"), an African-American locomotive engineer, were working as part of a three-person crew during "a regular freight run" on train P05P214. (*Id.* ¶¶ 11, 25.) Defendants claimed that a "possible violation of [their] operating and safety rules" had been committed by the three-person crew on June 14, 2016. (*Id.* ¶¶ 13–14.) A formal investigation hearing was held on June 21, 2016, even though such an investigation was "very unique." (*Id.* ¶ 16.) Following the conclusion of the investigation, Mr. Fennell ordered the termination of Mr. Harris, Mr. Fleming, and Mr. Johnson. (*Id.* ¶¶ 17, 22.) The Complaint alleges that Mr. Fennell "referenced [Mr.] Fleming's 2015 charge of discrimination when he subsequently . . . discharged the Plaintiffs." (*Id.* at 2.) Then, in December, 2016, Mr. Fennell "allowed the one African[-]American crew member[,] Mr. RJ Johnson (now deceased)[,] to return to work while denying this same leniency to the remaining two Caucasian crew members, namely Plaintiffs Fleming and Harris." (*Id.* ¶ 25.)

On December 9, 2016, Plaintiffs Fleming and Harris each filed an EEOC Charge claiming retaliatory discrimination against Defendants. (*Id.* ¶ 9.) Plaintiffs commenced the instant lawsuit within ninety days of receiving their respective Notice of Right to Sue letters from the EEOC. (*Id.* ¶ 10.) Defendants have moved to dismiss "the claims asserted by Mr.

---

[2] Mr. Fleming's EEOC Charge was filed on February 10, 2015. (ECF No. 1 at 1.)

Harris in their entirety" pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 7 at 1.)

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). In evaluating whether a claim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

## III. DISCUSSION

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from retaliating against an employee because he has opposed an unlawful employment practice, "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The purpose of Title VII's anti-retaliation provision is to preserve "unfettered access to statutory remedial mechanisms" for employees who fear reprisal. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346 (1997). An employer, therefore, violates Title VII by taking an adverse employment action against an employee based on an employee's exercise of his rights under Title VII. *See id.*

In order to state a prima facie case of retaliation under Title VII, Plaintiff must allege: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the [adverse] employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012). To satisfy the first element, a plaintiff may "use the protected activity of a closely related individual." *McCowen v. Vill. of Lincoln Heights*, No. 1:13cv0520 (WOB-KKL), 2014 WL 7227841, at *6 (S.D. Ohio Dec. 17, 2014) (citing *Thompson v. N. Am. Stainless, LP*, 562 U.S 170 (2011)), *aff'd*, 624 F. App'x 380 (6th Cir. 2015). Here, Mr. Harris does not allege that he personally engaged in protected activity. Rather, relying on *Thompson*, Mr. Harris alleges associational retaliation based on the protected activity of his co-worker, Mr. Fleming, who filed an EEOC Charge against Defendants in 2015. (ECF No. 1 at 1; *id.* ¶¶ 26–27.) Specifically, Mr. Harris alleges that he "was discharged because he was within the protected

4

zone of interest with [Mr.] Fleming" in violation of Title VII. (ECF No. 1 ¶¶ 26–27; ECF No. 11 at 7.)

Under Title VII, a "person claiming to be aggrieved" may file suit. 42 U.S.C. § 2000e-5(f)(1). In *Thompson*, the Supreme Court recognized that an employee may pursue a Title VII retaliation claim based on retaliation suffered in response to the protected activity of a third party. *See Thompson*, 562 U.S. at 175–78. In that case, the plaintiff and his fiancée were both employed by the same employer. *Id.* at 172. Three weeks after the plaintiff's employer was notified that the plaintiff's fiancée filed an EEOC Charge alleging sex discrimination, the plaintiff was terminated. *Id.* There, the Supreme Court held "that the term 'aggrieved' in Title VII . . . enabl[es] suit by any plaintiff with an interest arguably [sought] to be protected by the statute, . . . while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII." *Id.* at 178 (second alteration in original) (internal quotation marks and citation omitted). The Court found that the plaintiff was a "person aggrieved" within the meaning of Title VII because he was employed by the same employer as the original EEOC claimant and causing him injury was the employer's intended means of harming the claimant (his fiancée). *Id.* Thus, the plaintiff was within the "zone of interests" sought to be protected by Title VII. *Id.* Critical to the Court's analysis in *Thompson* was the nature of the relationship between that plaintiff and the party who engaged in the protected activity. While the Supreme Court "decline[d] to identify a fixed class of relationships for which third-party [retaliatory acts] are unlawful," it explained that "firing a close family member will almost always" give rise to a violation of Title VII's

5

anti-retaliation provision, while "reprisal on a mere acquaintance will almost never do so." *Id.* at 175.

Applying these principles to the instant action, the Court finds that Mr. Harris is not an "aggrieved" person within the meaning of Title VII, and therefore, he is not within the zone of interests "sought to be protected by the statutory provision." *Id.* at 177–78. Here, Mr. Harris, in his response brief, characterizes the relationship between himself and Mr. Fleming as co-workers who were "closely affiliated." (ECF No. 11 at 18.) Mr. Harris further argues that he and Mr. Fleming were "members of the small crew entrusted with this freight train, who belong to the same national union, the same local union division, [who] report to the same manager, who were tried together by Defendant[s] in one joint hearing, and who both received disparate discipline in retaliation for Plaintiff Fleming['s] protected activity." (*Id.* at 16.) Though Mr. Harris characterizes his relationship with Mr. Fleming in this manner, such characterization does not appear in the Complaint. At this stage of the proceedings, the Court must examine the sufficiency of the Complaint. *See Giacomelli*, 588 F.3d at 192. In so doing, there are no allegations in the Complaint to show that the relationship between Mr. Harris and Mr. Fleming was anything more than that of co-workers. The only allegation in the Complaint with respect to the relationship between Mr. Harris and Mr. Fleming is that they served as crew members on train P05P214. (ECF No. 1 ¶ 11.) Nothing about this allegation—or any other allegation in the Complaint—permits the reasonable inference that, like the plaintiff in *Thompson*, the relationship between Mr. Harris and Mr. Fleming was such that Mr. Harris was terminated to hurt and/or punish Mr. Fleming. *See Thompson*, 562 U.S. at 178 (concluding that "[h]urting [the plaintiff] was the unlawful act by which the employer

6

punished [his fiancée]"). *See Mackall v. Colvin*, No. ELH-12-1153, 2015 WL 412922, at *24 (D. Md. Jan. 29, 2015) (explaining that the plaintiff's associational retaliation claim fails, in part, because the plaintiff "does not allege any facts to establish that she and [a third-party who engaged in protected activity] were anything more than 'mere acquaintances' or co-workers" of the same race and who shared "the same chain of supervisors"); *Gibbs v. Norfolk So. Ry. Co.*, No. 3:14-cv-587-DJH, 2015 WL 4273208, at *5 (W.D. Ky. July 14, 2015) (noting that, with respect to plaintiffs' associational retaliation claim, plaintiffs "offer no facts to suggest that the relationship between them was such that [defendant] would have sought to punish one by firing the other"). Nor are there any allegations from which the Court can reasonably infer that, like in *Thompson*, Mr. Harris' termination would dissuade a co-worker from engaging in protected activity. *See Thompson,* 562 U.S. at 174 ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance [sic] would be fired.").

Thus, accepting Mr. Harris' well-pled factual allegations as true and drawing all reasonable inferences in his favor, the Court concludes that Mr. Harris has failed to state a cognizable claim of associational retaliation under Title VII. The Court will, therefore, grant Defendants' motion, and the claims alleged by Mr. Harris in the Complaint will be dismissed with prejudice.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss, (ECF No. 7), is GRANTED, and the claims alleged by Plaintiff Mark W. Harris are DISMISSED WITH PREJUDICE.

This, the 31st day of March, 2018.

/s/ Loretta C. Biggs
United States District Judge